UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

**PETER KANEFSKY, and JENNIFER KANEFSKY,**

    Plaintiffs,

v.

**FORD MOTOR COMPANY GENERAL RETIREMENT PLAN,**

    Defendants.                    /

**Case No.**

**Honorable**

**Mag. Judge**

LAWRENCE J. BRESKIN  P30413
Attorney for Plaintiff
P.O. Box 36192
Grosse Pointe, Michigan 48236
313 881-3669                              /

## PLAINTIFFS' COMPLAINT

Plaintiffs Peter Kanefsky and Jennifer Kanefsky, by and through their attorney, Lawrence J. Breskin, state their Complaint, as follows:

### PARTIES AND NATURE OF CLAIM

1.    Plaintiff Peter Kanefsky is an individual residing in the City of Troy, County of Oakland, State of Michigan.

2.    Plaintiff Jennifer Kanefsky is Peter Kanefsky's wife, and is also an individual residing in the City of Troy, County of Oakland, State of Michigan.

3. Defendant Ford Motor Company General Retirement Plan (hereinafter the "Pension Plan") is a defined benefit pension plan as that term is defined by the Employee Retirement Income Security Act of 1976, as amended, 29 USC §1001, et. seq. (hereinafter "ERISA").  The agent for service of process for the Pension Plan is the Secretary, Ford World Headquarters, One American Road, Dearborn, Michigan 48126.

4. This is an action for equitable estoppel to remedy the Defendant Pension Plan refusal to pay the retirement annuity which the Defendant Pension Plan (1) certified as the amounts owing to Plaintiff Peter Kanefsky at the time he was considering whether to retire, (2) represented were the correct pension benefit amounts when Plaintiff Kanefsky retired, and (3) paid to Peter Kanefsky as his correct pension benefits for almost two years (22 months) after his retirement, until the Defendant Pension Plan finally checked its work and found that it had irresponsibly miscalculated Kanefsky's benefit.  As the result of the Pension Plan's gross negligence, Kanefsky is suffering the loss of $2,427.78 per month (the amount of the Pension Plan's error) from the annuity Kanefsky relied upon when deciding whether to retire, and is suffering the further loss of $1,898.73 per month which the Pension Plan is taking to recover the amounts erroneously paid during the initial 22 months after his decision to retire.

## JURISDICTION AND VENUE

5.  Plaintiffs' action for equitable estoppel arises under ERISA § 502(a)(3), 29 USC § 1132(a)(3).  This court has federal question jurisdiction under 28 USC § 1331.  Venue is proper pursuant to ERISA § 502(e)(2).

## GENERAL ALLEGATIONS

6.  Peter Kanefsky was employed by Ford Motor Company, its predecessors, subsidiaries, or affiliates (hereinafter jointly referred to as "Ford Motor Company") for 38 years, from June 23, 1980 through March 30, 2019.

7.  From December 30, 1944 to the present, Ford Motor Company has sponsored and maintained the Pension Plan.

8.  Through his employment by Ford Motor Company, Peter Kanefsky was a participant in the Pension Plan.

9.  Jennifer Kanefsky has been Peter Kanefsky's wife during all times relevant to this litigation.

10.  As Peter Kanefsky's wife, Jennifer Kanefsky is a beneficiary in the Pension Plan, as that term is defined by ERISA § 3(8).

11.  For a portion of his employment by Ford Motor Company, Peter Kanefsky worked in England.

12.  Through his work in England, Peter Kanefsky earned 20.70 years of Foreign Contributory Service in the Pension Plan.

13. For a portion of his employment by Ford Motor Company, Peter Kanefsky worked in the United States.

14. Through his work in the United States, Peter Kanefsky earned 18.30 years of Contributory Service in the Pension Plan, in addition to his 20.70 years of Foreign Contributory Service.

15. In March, 2019, Ford Motor Company unilaterally decided to discontinue Peter Kanefsky's employment as part of a Salaried Involuntary Reduction Process (SIRP). Before being informed of Ford Motor Company's decision, Peter Kanefsky had intended to continue working for Ford Motor Company, had intended to build a larger savings for retirement, and had intended to earn additional pension credits before retiring.

16. In March, 2019, Peter Kanefsky was vested in the Pension Plan, and was eligible to begin receiving retirement benefits.

17. Upon being informed that his employment with Ford Motor Company was ending, Peter Kanefsky requested an estimate of his retirement benefits from the Pension Plan in the United States, and from the pension plan in the United Kingdom, so Peter Kanefsky could determine whether he needed to find new employment, continue working, and continue building income for retirement, or whether he was financial able to retire immediately.

18. In response to his request, the Pension Plan informed Peter Kanefsky that his estimate would be delayed because the amount of his US retirement benefit was linked to the amount of his United Kingdom benefit, and the United Kingdom benefit would take until the end of April to complete.

19. The Summary Plan Description (SPD) for the Pension Plan fails to include any explanation how the United Kingdom retirement benefit is linked to the US retirement benefit. The only mention of this topic is one sentence buried within the SPD section entitled <u>Situations Affecting Credited Service</u>, which states in its entirety,

> "Special Credited Service accrual rules apply if you:
> .
> .
> .
> • Were employed by a foreign subsidiary of Ford."

Instead of explaining the link, the SPD directs participants, "If any of these conditions apply to you, contact the NESC [National Employee Services Center] for information on how your service is determined or to request a credit review."

20. While waiting to learn the current amount of his pension benefit, Peter Kanefsky immediately utilized the re-employment assistance included in the SIRP program to attend seminars, complete training classes, and meet with employment

counselors to explore re-employment opportunities. In pursuit of continued employment, he met with several US and German based companies and traveled to an international conference in Texas to explore employment in his field of expertise.

21. On or about May 21, 2019, the calculation of Peter Kanefsky's United Kingdom benefit was completed.

22. Peter Kanefsky was then told that a determination of his US retirement benefit would be further delayed by the need to have that calculation performed within Ford Motor Company, and to thereafter have the Ford calculation checked by an external analyst performing a hand calculation.

23. Because of the time being put into calculating his benefit, and because of the review by an external analyst, Peter Kanefsky had full confidence that he would be given accurate information about his benefits.

24. On June 20, 2019, the Pension Plan sent a Retirement Benefits Kit to Peter Kanefsky which included Statements entitled:

- Pension Choices Letter
- Pension Disclosures Notice
- Pension Choices Form
- Special Tax Notice Regarding Plan Payments
  Ford Motor Company General Retirement Plan

25. The Pension Choices Letter began by informing Peter Kanefsky that:

> Commencing your pension benefit requires several decisions on your part. **This kit includes all the information**

**you need** to complete the process, make the best decisions for you and start your payment. (Emphasis added).

26. The Pension Disclosures Notice began by informing Peter Kanefsky (1) that "[c]ommencing benefits is a big step and requires careful planning", (2) that Kanefsky and his wife "need to make many important decisions about your benefits that could affect your financial security", and (3) that the information is provided "to help you understand the choices available to you." It boldly stated, "**You Have 30 Days to Plan**". The Pension Plan's Disclosure Notice also acknowledged, "**By law, Ford must give you relative value information** for all your payment options." (Emphasis in original).

27. The Pension Choices Form listed the personal information (date of birth, hire date, etc.) and the pension information (total credited service, foreign credited service, employee contributions, etc.) on which the benefit calculations were being computed. As instructed, Peter Kanefsky reviewed that information, and confirmed that there were no errors in the data on which his benefits were being calculated.

28. At no time did Peter Kanefsky ever provide the Pension Plan with any misinformation.

29. Of primary importance, the Pension Choices Form also stated the specific annuity amounts payable to Peter Kanefsky for his life, the specific amounts

payable to his beneficiary Jennifer Kanefsky upon Peter's death, and the relative value for each of 17 different benefit choices available from the Pension Plan.

30. Peter Kanefsky and his wife Jennifer consulted with their financial advisor. They determined that the benefit amounts stated in the Pension Choices Form were sufficient to fulfill the Kanefsky's retirement needs without building greater savings and larger pension benefits.

31. After twenty-five days of carefully considering their financial condition as it related to the annuity amounts stated on the Pension Choices Form, Peter Kanefsky decided to discontinue his pursuit of continued employment and to retire.

32. On July 15, 2019, Peter Kanefsky completed the Pension Choices Form by selecting the annuity paying $6,225.24 for Peter Kanefsky's life, and thereafter paying $4,046.41 for his wife Jennifer's life, which had a relative value of 108.33%.

33. On July 16, 2019, in reliance upon the amounts stated in the Pension Choices Form, Jennifer Kanefsky signed the Pension Choice Form consenting to the benefit selected by her husband Peter.

34. The first benefit payment from the Pension Plan was made in August, 2019, retroactive to Peter Kanefsky's retirement date of April 1, 2019.

35. The Pension Choices Form stated that 60 days after commencement of his payments, the Pension Plan would perform a recalculation of his benefit, as follows: "approximately 60 days after your Benefit Commencement Date, your benefit

will be recalculated to reflect your final employment data and you will receive a Pension Recalculation Notice reflecting any changes to your benefit payments."

36. After issuance of Peter Kanefsky's initial benefit check, sixty (60) days came and went without any need to change his benefit due to the Pension Plan's recalculation.

37. For twenty-two months, from April 1, 2019 through January, 2021, Peter Kanefsky was paid benefits in the annuity amount ($6,225.24) that the Pension Plan had promised when Peter Kanefsky made his carefully thought out decision to retire.

38. On January 4, 2021, the Pension Plan sent an Overdue Notice announcing that it was unilaterally changing Peter Kanefsky's choice of an annuity in the amount of $6,225.24 to an annuity paying only $3,797.46 per month, and demanding that Peter Kanefsky pay the Pension Plan $53,411.16, because the Pension Plan had made errors in its written representations to Peter Kanefsky regarding the amount of his annuity payments.

39. On January 5, 2021, Peter Kanefsky called the Pension Plan and was verbally told that the Pension Plan had failed to properly link the United Kingdom retirement benefits by entering the wrong data field into its computer. Peter Kanefsky requested a copy of the Pension Plan's claims and appeals procedure. The Pension Plan sent a Claim Initiation Form to Peter Kanefsky.

40. On January 17, 2021, the Pension Plan responded to Peter Kanefsky's request for an explanation of the benefit change by sending him a Detailed Calculation Statement. The Statement explained the calculation of the new benefit amount, but did not include any explanation how the Pension Plan had allowed an error to be made in the original calculation, any explanation how the outside expert hired to perform a hand calculation had made the same error as the original calculation, or how the recalculation 60 days after commencement of benefit payments had made the same error.

41. On January 28, 2021, the Pension Plan responded to Peter Kanefsky's request for an explanation of the benefit change by sending him another Detailed Calculation Statement. This Statement provided a detailed calculation of the benefit amount misrepresented on the Benefit Choices Form. Once again, the Pension Plan did not provide any explanation of how the Pension Plan had allowed this error to be made.

42. On February 1, 2021, the Pension Plan unilaterally changed Peter Kanefsky's annuity from $6,225.24 to $3,797.46.

43. On April 17, 2021, after numerous telephone calls, Peter Kanefsky submitted a claim to the Pension Plan objecting to the change in his annuity amount.

44. On May 1, 2021, the Pension Plan unilaterally changed Peter Kanefsky's annuity to $1,898.73 to recover the $53,411.16 which the Pension Plan had

irresponsibly overpaid.  For the next two years, from May 1, 2021, through August 1, 2023, Peter Kanefsky is being forced to live on a US retirement benefit of $1,898.73 per month, which is just thirty-one (31%) of the $6,225.24 he was promised, and on which he carefully planned his retirement.

45. On September 23, 2021, the Pension Plan's Claims and Appeals Management denied Peter Kanefsky's claim.  The Claims and Appeals Committee did find that the Pension Plan had made an "administrative error", but failed to investigate, disclose, or consider which for profit entity had made the error, or how the error had come to be made.  Instead, the Claims and Appeals Committee simply dumped the damages caused by the Pension Plan's administrative error in Peter Kanefsky's lap, because "[e]xceptions to the Plan rules are not permitted."

46. On November 3, 2021, an appeal was submitted to the Pension Plan for Peter Kanefsky.  The appeal included an itemized request for information and documents necessary to properly present Peter Kanefsky's appeal and to respond to the denial from the Claims and Appeals Committee.

47. On December 21, 2021, the Pension Plan denied Peter Kanefsky's appeal in its entirety, determined that the Pension Plan would continue to reduce Peter Kanefsky's annuity from $6,225.24 to $3,797.46, and determined that the Pension Plan would continue to further reduce his annuity to only $1,898.73 through August, 2023, to recover the overpayment caused by the Pension Plan's inexcusable error.

48. The December 21, 2021, denial letter informed Peter Kanefsky that this decision was "final, conclusive and binding."

49. On January 7, 2022, two weeks after making its "final, conclusive and binding" decision, the Pension Plan responded to Peter Kanefsky's information request by refusing to provide any information except (1) the actual Pension Plan document, (2) records of communications between Peter Kanefsky and the Pension Plan, and (3) the agenda for the Employee Benefits Committee meeting on December 13, 2021, at which Peter Kanefsky's appeal was considered. At no time has the Pension Plan been willing or able to provide an explanation for how its misrepresentations occurred, why its administrative error was not simply gross negligence, or why it failed to hold its service providers responsible for their gross negligence while acting on behalf of the Pension Plan.

## COUNT I
## EQUITABLE ESTOPPEL
## TO REMEDY MATERIAL MISREPRESENTATIONS
## ON OFFICIAL PENSION PLAN DOCUMENTS
## PRESENTED TO PETER KANEFSKY

50. During 2019, Peter Kanefsky was considering whether to retire, whether to apply for benefits from the Pension Plan, and which form of retirement benefit to select.

51. In order to make his decision, Peter Kanefsky asked the Pension Plan to provide him with the current amount of his pension benefits.

52. The amount of his pension benefits was material to the decision which Peter Kanefsky was making regarding retirement.

53. On June 20, 2019, the Pension Plan provided Peter Kanefsky with a Retirement Kit, which contained a Pension Choices Form, an official plan document, which grossly misrepresented the amount of Peter Kanefsky's pension benefit choices.

54. As a result of its misrepresentation, the Pension Choices Form failed to inform Peter Kanefsky of the amount of his pension benefits, and the amount of the various optional forms of benefits which Peter Kanefsky had a right to choose.

55. The Pension Plan violated its responsibilities under ERISA, ERISA Regulations, and the Pension Plan's own rules, by failing to inform Peter Kanefsky of the amount of his pension benefits.

56. The pension benefits stated on the Pension Choices Form were in amounts which represented that Peter Kanefsky's benefits from the Pension Plan were not subject to a significant offset for the pension benefits which he was eligible to receive from his United Kingdom pension.

57. The Pension Plan was fully aware of the true facts, that Peter Kanefsky's benefits from the Pension Plan were subject to an offset for all of the benefits he would be receiving from his United Kingdom pension.

58. The Pension Plan understood and intended that Peter Kanefsky would be acting upon the representations contained in its Retirement Kit, including the representation of his benefit amounts stated in the Pension Choices Form. This intention is specifically shown by the Pension Plan statement that "[t]his kit contains all the information you need to complete the process, make the best decisions for you and start your payment."

59. Peter Kanefsky was unaware of how his United States retirement benefits would be effected by the benefits from his United Kingdom pension because (1) the Pension Plan chose not to disclose that information in the Summary Plan Description, and rather directed participants to contact the NESC for that information, which Peter Kanefsky did, (2) the Pension Plan never made a general distribution of the actual Plan document to plan participants, did not post the actual Plan document on the Pension Plan website, and only provided the Plan document in response to a special request from a participant, and (3) the Pension Plan has acknowledged that "we do not expect participants of the Plan to be able to perform benefit calculations."

60. Peter Kanefsky detrimentally and justifiably relied upon the Pension Plan's misrepresentation written in the official Pension Choices Form when making decisions whether to apply for his pension benefits in 2019 or to continue working, whether to apply for his United Kingdom pension or wait, whether to take a joint

and survivor benefit or some other form of benefit, and whether to spend significant amounts after retiring on discretionary items such as travel, home improvements, charitable contributions, and political contributions. Additionally, Peter Kanefsky's wife relied upon the Pension Plan's misrepresentations when deciding whether to authorize a joint and survivor pension benefit, deciding whether to continue working or apply for her pension benefits, and when deciding which form of benefits to take for her pension.

61. The misrepresentations by the Pension Plan were in writing, as part of its Benefit Choices Form given to Peter Kanefsky.

62. Even if the Plan document is unambiguous, due to the complexity of the calculation, Peter Kanefsky did not have the training necessary nor access to the information necessary to confirm whether the amounts stated in the Benefit Choices Form were correct or misrepresentations.

63. For the reasons stated more fully above and in Peter Kanefsky's appeal to the Pension Plan, extraordinary circumstances exist in which the balance of the equities strongly favor application of estoppel.

64. As the result of the Pension Plan's material misrepresentations, Peter Kanefsky has been damaged by being deprived of the annuity which he chose in accordance with the Pension Plan's rules ($6,225.24 per month for Peter Kanefsky's life, and thereafter $4,046.41 per month for his wife Jennifer's life). Instead, the

Pension Plan has unilaterally substituted a 39% smaller benefit of $3,797.46 for Peter Kanefsky's life, and an as yet undisclosed smaller amount thereafter for the life of his wife Jennifer. And, currently, Peter Kanefsky's annuity has been unilaterally reduced by 69% from $6,225.24 to only $1,898.73 through August, 2023.

65. To remedy the material misrepresentations made by the Pension Plan, the Pension Plan should be equitably estopped from failing to pay the annuity which the Pension Plan stated that it would pay ($6,225.24 per month for Peter Kanefsky's life, and thereafter $4,046.41 per month for his wife Jennifer's life), retroactive to February 1, 2021, when the Pension Plan unilaterally stopped paying the promised annuity amounts.

Wherefore, Plaintiffs Peter Kanefsky and Jennifer Kanefsky respectfully pray that the Court equitably estop Defendant Ford Motor Company General Retirement Plan from failing to pay the annuity stated in its Pension Choices Form, and order that Defendant Ford Motor Company General Retirement Plan pay retirement benefits for Peter Kanefsky's lifetime at a rate of $6225.24 per month retroactive to February 1, 2019, and thereafter pay retirement benefits for Jennifer Kanefsky's lifetime at a rate of $4,046.41 per month. Plaintiffs Peter Kanefsky and Jennifer Kanefsky further request that Defendant Ford Motor Company General Retirement Plan be ordered to pay statutory interest on amounts which should have, but were not,

paid since February 1, 2021, when Peter Kanefsky's benefits were unilaterally reduced, together with court costs, litigation costs, and attorney fees under ERISA § 502(g)(1).

                                      Respectfully submitted,

                                      s/Lawrence J. Breskin
                                      Lawrence J. Breskin P30413
                                      Attorney for Plaintiff
                                      P.O. Box 36192
                                      Grosse Pointe, Michigan 48236
                                      313 881-3669
                                      LJBreskin@gmail.com

March 15, 2022