UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER KANEFSKY and
JENNIFER KANEFSKY,

      Plaintiffs,

v.

FORD MOTOR COMPANY
GENERAL RETIREMENT PLAN,

      Defendant.
_____/

Case No. 22-cv-10548

Honorable Sean F. Cox
United States District Court Judge

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS**

      This is an ERISA equitable estoppel case. Plaintiffs, Peter Kanefsky ("Kanefsky") and Jennifer Kanefsky, seek to estop Defendant, Ford Motor Company General Retirement Plan (the "Plan"), from permanently reducing their monthly annuity payments and from recouping $53,411.16 in overpayments allegedly sent to them. This case is before the Court on Ford's Motion to Dismiss for Failure to State a Claim. Pursuant to E.D. Mich. LR 7.1 (f)(2), the Court finds this Motion has been adequately briefed and will rule without hearing.

      For the reasons set forth below, the Court **GRANTS** Defendant's Motion. The Court finds that Plaintiffs have failed to plead sufficient facts to make a plausible claim that Ford intended Kanefsky to act based on its representations, which is a required element of an equitable estoppel claim.

1

## BACKGROUND

### A. Procedural Background

On March 15, 2022, Plaintiffs filed this action in federal court. This Court has proper federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. On May 12, 2022, pursuant to a stipulation granting extra time to respond (ECF No. 7), Ford filed a Motion to Dismiss. (ECF No. 8).

Rather than rule on Ford's Motion, this Court granted Plaintiffs leave to file an Amended Complaint. (ECF No. 10). On June 9, 2022, Plaintiffs filed an amended complaint, which is the active complaint in this case. (Compl. ECF No. 11).

On June 23, 2022, Ford filed a Motion to Dismiss Plaintiffs' First Amended Complaint, which is the Motion currently before this Court. (Def.'s Mot. ECF No. 13).

Plaintiffs' Complaint contains one Count — "Equitable Estoppel to Remedy Material Misrepresentations on Official Pension Plan Documents Presented to Peter Kanefsky." (Compl. at 14). Plaintiffs allege that Ford should be equitably estopped from recovering pension benefit amounts paid to Kanefsky above what he was entitled because Kanefsky relied on the promise of the miscalculated payments to his detriment. (Compl. ¶ 55-65).

### B. Factual Background

Since December 30, 1944, Ford Motor Company has maintained the Plan. (Compl. ¶ 7). Kanefsky worked as an employee for Ford Motor Company, its subsidiaries, or its affiliates ("Ford") for 38 years and contributed to the Plan. (Compl. ¶ 6). For 20.7 years, Kanefsky worked in England and contributed to the Plan. (Compl. ¶ 12). For an additional 18.3 years, Kanefsky worked in America and contributed to the Plan. (Compl. ¶ 13).

In March 2019, Kanefsky was laid off from Ford. (Compl. ¶ 15).[1] After being laid off, Kanefsky's initial intention was to find new employment. (Compl. ¶ 33). As evidence of his intention, Kanefsky participated in the "re-employment assistance" program Ford offered to all its recently laid off employees. (Compl. ¶ 23).

Kanefsky also considered retirement. He contacted the Plan's support center and requested a retirement benefits estimate from his time working in the United States and England. (Compl. ¶ 18). The Plan told Kanefsky it would take time to compile his estimate because the amounts he was entitled to from his service in England and America were linked. (Compl. ¶ 20-21). The summary description of the Plan does not specify how it links retirement benefits accrued in England and the United States. (Compl. ¶ 22).

On May 21, 2019, the Plan sent Kanefsky his estimated benefit calculation for his work in England. (Compl. ¶ 24). Kanefsky was entitled to an estimated £32,222.24 per year. (UK Pension Estimate at 4, ECF No. 13-1). The Plan also told Kanefsky that his estimate for his service in America would be delayed because the Plan had to offset his annuity payments from his service in England and thereafter have the calculation checked by an external analyst. (Compl. ¶ 25).

On June 20, 2019, the plan sent Kanefsky a "Retirement Benefits Kit." The Kit contained an estimate of the benefits Kanefsky accrued while working in America. (Compl. ¶ 27). The letter accompanying the Kit stated that "this kit includes all the information you need" to make an informed decision about how and when to start receiving pension benefits. (Compl. ¶ 28). The

---

[1] Kanefsky was fully vested and eligible to collect retirement benefits from Ford's pension plan when he was laid off. (Compl. ¶ 17).

Benefits Kit offered Kanefsky seventeen different choices for how and when to receive his pension benefits. (Compl. ¶ 32).

The Kanefskys and their financial advisor, relying on the estimates in the Benefits Kit, determined that Kanefsky had saved enough to retire. (Compl. ¶ 34). Kanefsky elected a pension plan that would pay him $6,225.24 per month for the remainder of his life and $4046.41 for his wife's life as a beneficiary. (Compl. ¶ 36-37).

Ford's Pension Plan Committee approved Kanefsky's application. (Compl. ¶ 38). Ford also informed Kanefsky that sixty days after the commencement of his benefits, the Plan would perform a recalculation of his benefits and his entitlement may be subject to change. (Compl. ¶ 40).

Kanefsky received his first pension payment in August 2019. (Compl. ¶ 39). After sixty days, the Plan recalculated Kanefsky's benefits and made no changes. (Compl. ¶ 41). The Plan paid Kanefsky $6225.24 per month, without issue, from April 1, 2019, until January 2021. (Compl. ¶ 42).

On January 4, 2021, after almost two years, the Plan sent Kanefsky an overpayment notice. (Compl. ¶ 43). The notice stated that the Plan had miscalculated Kanefsky's benefit entitlement because it made an error when offsetting his benefits from working in America with his benefits from working in England. (Compl. ¶ 44). The Plan gave no explanation why it did not catch the error made in its original calculation when double-checked by an outside expert or when Kanefsky's benefits were recalculated after 60 days. (Compl. ¶ 45).

After another recalculation, the plan determined Kanefsky was entitled to an annuity paying $3797.46 per month.[2] (Compl. ¶ 43). The plan also demanded Kanefsky repay $53,411.16, the amount he was overpaid. (Compl. ¶ 43).

On February 1, 2021, the plan unilaterally changed Kanefsky's monthly benefit payment from $6225.24 to $3797.46. (Compl. ¶ 47).

On May 1, 2021, the plan further reduced Kanefsky's payment to $1898.73 per month until the plan recovered the amount it overpaid Kanefsky. (Compl. ¶ 49).

Kanefsky filed a claim with the Plan objecting to the change in his annuity amount. His claim and the appeal of his claim were rejected, which lead to this suit. (Compl. ¶ 50-52). Ford now moves to dismiss Kanefsky's equitable estoppel claim pursuant to Fed. R. Civ. P. 12(b)(6).

## STANDARD OF DECISION

Rule 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations will not suffice. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[2] Kanefsky does not contest that his actual benefit entitlement is smaller than the $6,225.24 per month he initially received.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Here, Kanefsky's First Amended Complaint references his Pension Plan, a "Retirement Benefits Kit," and benefit calculations that were sent to him. (Compl. ¶ 27, ECF No. 11). Ford attached excerpts of the Pension Plan, the Retirement Kit, and benefit calculations to its Motion as Exhibits A, B, C, D, E, and F. (Def.'s Mot., ECF No. 13-1). As such, the Court may consider those documents.

## ANALYSIS

The Court holds that Kanefsky has failed to plead sufficient facts to make out a plausible claim for equitable estoppel. To establish a claim for equitable estoppel, a plaintiff must satisfy five elements. When a case involves an unambiguous pension plan, as it does here,[3] the Sixth Circuit imposes three additional elements. *Deschamps v. Bridgestone Americas, Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 273 (6th Cir. 2016).

The eight elements a plaintiff must establish for an equitable estoppel claim involving an unambiguous pension plan are: (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party

---

[3] Both parties argue as if the Plan is unambiguous. Therefore, the Court will treat the Plan as such. (*See* Pl.'s Resp. 11, ECF No. 17; Def.'s Mot. 14, ECF No. 13).

asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; (5) detrimental and justifiable reliance by the party asserting estoppel on the representation; (6) a written representation; (7) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (8) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel. *Deschamps*, 840 F.3d at 273.

Ford's Motion focuses on elements two, three, four, five, and eight. (Def.'s Mot. 15, ECF No. 13). The Court need only address element three.

The Court finds that even taking all Kanefsky's claims as true, his equitable estoppel claim fails on element three. The third equitable estoppel element requires "an intention on the part of the party to be estopped that the representation be acted on or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended." *Bloemker v. Laborers' Local 265 Pension Fund,* 605 F.3d 436, 442 (6th Cir.2010).

Kanefsky argues that based on *Paul v. Detroit Edison Co. & Michigan Consol. Gas Co. Pension Plan*, 642 F. App'x 588 (6th Cir. 2016), the Plan's actions were sufficient to show it intended Kanefsky to act. (*See* Pl.'s Resp. at 14, ECF No. 17). While *Paul* supports Kanefsky on other elements, in the context of element three, *Paul* does not help him.

In *Paul*, a worker was completely vested in his company's pension plan and still employed by the company. *Paul*, *supra* at 590. To encourage the worker to retire early, the plan offered him special incentives and sent him an unsolicited "Pension Calculation Statement." *Id.* at 590, 94. The calculation statement gave the worker credit for almost 24 years of service, even though the worker knew that he should only get credit for 21 years. *Id.*

7

The worker expressly raised this issue with his company but was given multiple oral and written assurances that the benefit calculation he received was correct. *Id.* Further, the worker had no way to double-check the calculation estimates to confirm their accuracy. *Id.* at 594. In reliance on his estimated benefit amount, the worker decided to retire early. *Id* at 591.

Two years later, the plan realized it made a calculation error. *Id* at 591. The plan attempted to recoup the amount it overpaid and reduce the worker's future monthly entitlement. *Id*. The worker filed an equitable estoppel claim to enjoin the plan from doing so. *Id*.

The court in *Paul* found that the plan intended for the worker to act on its representations because the plan was "actively inviting employees to consider early retirement by offering new incentives and modifications to the pension plan." *Paul*, 642 Fed. Appx. at 594.

In other words, in *Paul*, the plan sought out an active employee, sent him an unsolicited benefits estimate, and incentivized him to retire early with special pension modifications. *Id*. Therefore it was logical for the court to find the plan intended the worker to act on its representations.

The logic from *Paul* does not apply in Kanefsky's case for three reasons. First, Kanefsky was not actively employed by Ford—he was laid off before he considered retirement. (Compl. ¶ 16-18, ECF No. 11). Second, it was Kanefsky that reached out to Ford to inquire about his pension benefits, not Ford seeking out Kanefsky. (Compl. ¶ 18). Third, Ford offered Kanefsky no special incentive to start collecting his retirement benefits when he did. Kanefsky was fully vested in the Plan and free to begin collecting benefits whenever he saw fit. (Compl. ¶ 17).

Kanefsky's case is more like *Stark v. Mars, Inc.*, 879 F. Supp. 2d 752 (S.D. Ohio 2012), *aff'd*. 518 F. App'x 477 (6th Cir. 2013). In *Stark*, an employee voluntarily retired from her company. *Id* at 757. The employee chose not to return to work and live off her savings. *Id*.

8

When the employee became eligible, she reached out to her former company to start collecting pension benefits. *Id* at 758. The company sent the employee a "Pension Estimate Calculation Statement," which contained an erroneous estimate of the employee's benefits. *Id*. The employee, in reliance on oral assurances and the incorrect statement, started collecting her pension benefits at an inflated amount. *Id*. at 759.

Subsequently, the company realized it had made a calculation error. The company sought to reduce the employee's monthly payment and recoup the money it overpaid. The employee turned to the courts to equitably estop the company from doing so. *Id* at 761.

The court found the employee's equitable estoppel claim failed because, in part, the employee had not shown that her former employer intended her to act based on its representations. The court found no evidence "that it mattered one way or another to [the company] whether [the employee] elected to begin receiving retirement benefits when she did." *Id* at 765.

The company, even though it made a mistake, was simply responding to an inquiry by the employee, and stood to gain no benefit regardless of when the employee started to receive benefits.

Like in *Stark*, Kanefsky was no longer working for his employer and his benefits were fully vested. Ford had nothing to gain from Kanefsky's retirement, regardless of when he chose to do so. Even though it made a calculation error, Ford was responding to a request from Kanefsky for an estimate about his retirement benefits. Therefore, even taking all the facts in Kanefsky's complaint as true, his situation is like the employee in *Stark*, and unlike the worker in *Paul*. There is no evidence that Ford intended Kanefsky to take any specific course of action based on its representations.

## CONCLUSION

For the reasons stated above, **IT IS SO ORDERED** that Defendant's Motion to Dismiss is **GRANTED**. Kanefsky has plead insufficient facts to plausibly argue that Ford intended Kanefsky to act based on the benefit estimate he requested. Therefore, Kanefsky has failed to make a plausible claim for equitable estoppel, and his case shall be dismissed.

**IT IS SO ORDERED.**

            s/Sean F. Cox
            Sean F. Cox
            United States District Judge

Dated: January 13, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 13, 2023, by electronic and/or ordinary mail.

            s/Jennifer McCoy
            Case Manager